UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SAMUEL SIMS, JR.                                    CIVIL ACTION

VERSUS                                              NO. 19-13165

TERREBONNE PARISH CRIMINAL                          SECTION "A" (2)
JUSTICE COMPLEX, ET AL.

## REPORT AND RECOMMENDATION

Plaintiff, Samuel Sims, Jr., was a prisoner incarcerated in the Terrebonne Parish

Criminal Justice Complex ("the Terrebonne jail") in Houma, Louisiana, as a pretrial

detainee at all relevant times. He filed this complaint pro se and in forma pauperis

pursuant to 42 U.S.C. § 1983 against the Terrebonne Parish Criminal Justice Complex

and other identified parties. Sims alleges that beginning in July 2019, while incarcerated

in the Terrebonne jail, he was subjected to unconstitutional conditions of confinement

and prison officials tampered with his mail. He seeks injunctive relief and monetary

compensation.  Record Doc. No. 1 at p. 5 (Complaint at ¶ V).

On December 10, 2019, I conducted a telephone conference in this matter.

Participating were: plaintiff pro se; Bill Dodd and Brian Marceaux, counsel for

defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v.

McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

In his original complaint, Sims alleged that he was in disciplinary lockdown from

July 18 to July 24, 2019, during which he was subjected to unconstitutional conditions.

Sims testified that another inmate "had thrown human feces and urine all over his cell walls and floor. He then stopped up the toilet bowl and flooded his cell by continually flushing the toilet. This caused the water to liquify the feces . . . ." Record Doc. No. 1 at p. 6. Plaintiff alleged that "[t]he contaminated water began coming out of the [other] inmate's cell overflowing the upper level of lockdown and spewing over the balcony down into the lower level cells at the bottom. [Plaintiff] attempted to keep the liquidated sewage . . . out of [his] cell by using [his] jumpsuit to push the soiled water out under the door, although it constantly seeped in. After hitting the 'call button' for help . . . [a] clean-up crew came and mopped up [the water, but] they did not sanitize the areas where the feces and urine [had been]." Id. (emphasis omitted).

Sims elaborated that on "July 20, 2019 an inmate threw 'human feces' . . . out [of] his cell and all over the lockdown dorm's walls, tables, floor, etc. This incident occurred once we were placed back into our cell [after we showered]. . . . [Because he was in his cell, he] wasn't able to press the emergency call button . . . [forcing him] to wave a towel for emergency assistance." Id. at p. 7. Plaintiff stated that "[t]he place was still soiled with . . . human feces [despite the jail officials] being notified hours earlier that the area needed to be cleaned and sanitized. The sergeant in the booth [said] that [other officials were] notified. . . . [The inmates'] food was still passed out [at mealtime despite] these . . . conditions [, which plaintiff alleges] exposed [the food] to human feces." Id. Sims wrote that "the odor [was] unbearable" and he was sick to his stomach and vomited. Id.

He alleged that the conditions were not resolved until 8:30 and 9:00 that night, when the "the nightly medical staff (Amber) came to distribute medication. She refused to pass out the [medication] under those . . . conditions [, which] compelled the officer . . . with her to tend to the matter . . . [and the mess was then cleaned up] ." Id. at p. 8.

During his Spears testimony, Sims testified that he has been incarcerated at the Terrebonne jail for six months, having been arrested on June 23, 2019, and charged with domestic abuse battery and being a convicted felon with a firearm. He stated that he believed his trial date was January 21, 2020. Sims confirmed that the incidents which gave rise to his conditions of confinement claims occurred from July 18 to 24, 2019. Sims testified that he was in disciplinary lockdown for ten days at that time for fighting with another inmate.

Sims confirmed that the first incident occurred on July 18, 2019, when he was first "placed into lockdown," where his cell was "in the bottom level." He stated that another inmate, whom he identified as Keith Ross, had feces in his toilet and began throwing feces in Ross's cell and "out onto the balcony."  Plaintiff stated that water from Ross's toilet "overflowed and came down into the lower level." Sims testified that "another inmate . . . out for his hour break . . . hit the [alert] button and told [the guards what was happening]." He stated that the water "was seeping into all of the cells, so [he] took his [jumpsuit] and . . . was pushing the [water] out of his cell, trying to keep it out . . . [and] that's when a clean-up crew came and . . . cleaned the [common area] of the [lockdown

dorm], but they didn't sanitize [inside] the [individual] lower-level cells." When asked how long it took for the clean-up crew to arrive once called, Sims admitted that they arrived within "fifteen to twenty minutes." Sims described the inside of his cell as having "a Styrofoam container that had previously contained human feces [which had floated in] the water," and stated that the cleanup crew did not sanitize his cell during the next two days. He stated that after those two days, he was moved to an upper-level cell that had not been contaminated by the incident.

As to the second incident, Sims testified that it occurred on July 20, 2019. He stated that prison officials had "turned off the water in" [Ross's] cell, which forced Ross "to use the bathroom without being able to flush the toilet." Plaintiff testified that Ross's toilet "over[flowed] with human feces," and after Ross unsuccessfully tried to alert the guards to this problem using his towel, Ross "[used] the Styrofoam trays and put[] the human feces in the . . . trays and [was] throwing [his feces out of his cell] all over the walls, table, floor, kiosk machine, [in the upper and lower level]. . . ." Sims stated that the feces did <u>not</u> get into his cell, but testified that "the smell was unbearable." Plaintiff said that the guard on duty "came on the intercom and said that he had notified [other prison officials]" to summon a cleanup crew. He stated that he and the other inmates "started waving [their towels] asking them to get the human feces off the floor and the walls, but they never came . . . it was over twelve hours [that the conditions persisted]."

4

Sims testified that one of the nurses, Nurse Kelly, came to distribute medication and had to "step[] over human feces [and] look[ed] up at [Ross] to make sure he [wasn't] going to throw . . . human feces on her. She pass[ed out] the medication [in that environment]." He stated that "later on [prison officials came to pass out their] food, and [the inmates told] them . . . to come clean up the human feces . . ., because the smell was unbearable, and . . . no one came to clean it up."

Sims stated that at the end of that twelve-hour period, "Nurse Amber . . . a new nurse [on the night shift] . . . she [came to] serve med[ication] about 8:30 or 9:00 [p.m.] . . . She shook her head no, [and told the guard with her] that she wasn't [going to] pass out [the medication] in those conditions. She pushed the cart through the door and put it by the booth and went into the booth." Plaintiff testified that "[the officer] that was with her must have called someone . . . and [someone] got a clean-up crew to come in and clean up the human feces [in the dorm]." Sims stated that the clean-up crew arrived five or ten minutes after Nurse Amber went into the booth. He said that the clean-up crew "got a mop and bucket and . . . [cleaned up] the human feces off the floor and passed a mop over the area. [But] they didn't clean the walls or sanitize anything."

Plaintiff testified that this type of incident happened a third time, on July 22, 2019. He said that he was supposed to get out of lockdown on that date, but remained in lockdown until July 24, 2019. Sims stated that the clean-up crew came to clean up the feces "about an hour or two" after the incident on that day. He confirmed that during

these second and third incidents, the feces did not get into his cell, but the smell made him sick to his stomach and caused him to "throw up everything [he had eaten that day]." Plaintiff stated that human feces was still on trays and on the walls on the lower level, including in the showers, the day after the July 20, 2019 incident. He again confirmed that he was released from disciplinary lockdown on July 24, 2019. Sims stated that he followed the prison grievance procedures as to these allegations.

As part of his <u>Spears</u> testimony, plaintiff also claimed that defendants tampered with his mail. Sims testified that he tried to send a letter about the above-described conditions to the American Civil Liberties Union, but his mail "was intercepted, and . . . never left the jail . . . [even though] it was certified legal mail . . . it was stopped and . . . returned to [him]." He alleges that he has "the time and the dates" when "[defendants] opened the mail, and [he felt that] they read the [letter to the American Civil Liberties Union], and they brought it back to [him] and said that the mail . . . had reached the post office, but when he got his paper to go [and] check the tracking number on the certified mail, [the tracking information stated]  that [the mail had] not reached the post office." Sims stated that the captain at the jail stated that it had reached the post office, but that "the receiver didn't want to pay for the delivery." He said that he had sent "legal mail out before and it always made it to its destination."  He confirmed that this mail involved the same subject matter as the instant lawsuit.

## ANALYSIS

I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579–80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014).  Such complaints by prisoners must be dismissed upon review if they are frivolous, fail to state a claim upon which relief can be granted, or seek monetary relief for a defendant who is immune. 28 U.S.C. § 1915A(b)(1) and (2); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly

identify and authenticate documents. " Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1) as frivolous because his claims lack an arguable basis in

law. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[1]

## II.    CONDITIONS OF CONFINEMENT

Sims was a pretrial detainee at all times that form the basis of his claims in this case. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. <u>McCarty v. Zapata County</u>, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing <u>Gibbs v. Grimmette</u>, 254 F.3d 545, 547 (5th Cir. 2001); <u>Hare v. City of Corinth</u>, 74 F.3d 633, 636 (5th Cir. 1996)); <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999). In <u>Hare</u>, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or <u>Spears</u> testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an

---

[1]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Sims's allegations do not rise to the level of violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held

liable "unless the official <u>knows of and disregards an excessive risk to inmate health or</u> <u>safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>."  <u>Id.</u> at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof at a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of</u> <u>County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Sims's written allegations and testimony meet neither of these two requirements. The unsanitary conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation.  Sims conceded in his testimony that he has suffered no <u>serious</u> physical injury or illness caused by the allegedly unsanitary conditions, only temporary vomiting and feeling sick to his stomach. Thus, he alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the temporary, short-term circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

In addressing similar situations in other cases filed by prisoners, courts have held that allegations like Sims's about feces in the lockdown dorm fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., 2010

WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215);
Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained
of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains,
52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking
water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's]
dorm is less sanitary than he would like does not render the conditions
unconstitutional.").

In two cases, the Fifth Circuit has held that only extreme, virtually permanent
conditions of cells that contained excrement and other filth violate the Eighth
Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were
"continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook,
376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted
fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on
the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a
prisoner was locked in a "management cell" for three days, where the cell was,
"according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and
bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006. The appeals court quoted the
Supreme Court's holding that "'the length of confinement cannot be ignored. . . .   A
filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for

weeks or months.'" Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)).

The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal

civilized measure of life's necessities'" when he  was confined in the cell for only three

days. Id. (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).        When compared to the

conditions described by the Fifth Circuit in the foregoing cases, the less objectively -

unsanitary and clearly short-term, temporary conditions described by Sims do not rise to

the level of a constitutional violation. Cleanup crews arrived to address the situation in

each instance, although they did not do so as quickly or as thoroughly as Sims desired.

The conditions he experienced in the Terrebonne jail were neither virtually permanent

nor an extreme deprivation of the type that might offend the Constitution, as described

in Fifth Circuit precedent, and he suffered no serious physical injuries or ailments as a

result of any allegedly unsanitary condition.  Unsanitary conditions may rise to the level

of a constitutional violation only if they result in "a serious or significant . . . injury

resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th

Cir.), cert. denied, 114 S. Ct. 393 (1993) (emphasis added); accord White v. Gregory, 1

F.3d 267, 269 (4th Cir. 1993), cert. denied, 114 S. Ct. 931 (1994).  Sims's testimony

about the minor physical conditions he described do not support the conclusion that any

of the symptoms he displayed were serious.

   Any harm that Sims may have suffered by the upset stomach and vomiting he

describes in this case was not serious and did not rise to the level of a constitutional

violation.  See, e.g., Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some bleeding not serious); Griffin v. DeRobertis, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious); cf. Barker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (pneumonia is serious medical need).  Certainly, plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).

Sims has not alleged sufficiently serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement.  Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and his claim concerning unsanitary conditions of his confinement must be dismissed for failure to state a cognizable constitutional claim under Section 1983.

III.    MAIL TAMPERING

16

Sims alleges that he attempted to send mail to the American Civil Liberties Union concerning the incidents described above, but defendants opened and tampered with his mail by stopping the mail from reaching the post office. The United States Court of Appeals for the Fifth Circuit has held that prison practices or restrictions concerning prisoner mail implicate two distinct but intertwined constitutional rights:  (1) the right of access to the courts, which the Supreme Court has indicated lies in both the Due Process Clause and the First Amendment, Wolff v. McDonnell, 418 U.S. 539, 575-76 (1974), and (2) the right to freedom of speech guaranteed by the First Amendment.  Walker v. Navarro Cnty. Jail, 4 F.3d 410, 413 (5th Cir. 1993); Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993).  Specifically, the right of access to the courts is implicated only when the mail in question is legal in nature, while the right to free speech is relevant to claims involving both legal and non-legal mail.

Regardless of what rights are implicated, however, it is clear that prisoners' constitutional rights with respect to mail are not absolute.  A prison practice or regulation may permissibly interfere with an inmate's mail, including his legal mail, if the practice is "reasonably related to a legitimate penological interest."  Morgan v. Quarterman, 570 F.3d 663, 666 (5th Cir. 2009) (quotation omitted) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)); see Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) (reasonableness standard applies to challenges to regulations as well as to actions of a prison official).

To the extent that Sims is complaining that the tampering with his outgoing mail interfered with his constitutional right of access to the courts, it is well-established that

prisoners have such a constitutional right.  <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977).

However, "[w]hile the precise contours of a prisoner's right of access to the courts remain

somewhat obscure, the Supreme Court has <u>not</u> extended this right to encompass more than

<u>the ability of an inmate to prepare and transmit a necessary legal document to a court</u>."

<u>Vaccaro v. United States</u>, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation

omitted) (emphasis added); <u>accord</u> <u>Manning v. Sumlin</u>, 540 F. App'x 462, 463 (5th Cir.

2013) (citing <u>Lewis v. Casey</u>, 518 U.S. 343, 356 (1996); <u>Brewer</u>, 3 F.3d at 821).

Significantly, to state a claim that his constitutional right of access to the courts was

violated, Sims must demonstrate that his position as a litigant was actually prejudiced.

<u>Lewis</u>, 518 U.S. at 356; <u>Every v. Jindal</u>, 413 F. App'x 725, 727 (5th Cir. 2011) (citing

<u>Lewis</u>, 518 U.S. at 349-50; <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999));

<u>Cochran v. Baldwin</u>, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); <u>Eason v. Thaler</u>,

73 F.3d 1322, 1328 (5th Cir. 1996).  It is not sufficient for a prisoner to establish only that

his mail was opened outside of his presence or without his consent.  <u>Walker</u>, 4 F.3d at 413.

The inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to

pursue a legal claim."  <u>Lewis</u>, 518 U.S. at 351.  In <u>Lewis</u>, the Supreme Court made clear

that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access

to the courts.  In examining the particular claims of the inmates in the <u>Lewis</u> case, the Court

stated that the First Amendment right of prisoners to access to the courts is the right to

"have a reasonably adequate opportunity to file <u>non</u>frivolous legal claims challenging their

convictions or conditions of confinement."  <u>Id.</u> at 356 (emphasis added).

18

In this case, Sims did not address this claim for mail tampering in his written submissions but first asserted these allegations in his <u>Spears</u> testimony. However, his testimony demonstrates that he fails to state a cognizable Section 1983 claim for violation of his rights of either access to the courts or free speech.  As to his First Amendment right of access to the courts claim, Sims fails completely to allege actual injury to his position as a litigant, as required in <u>Lewis</u> and its progeny.  The alleged tampering with his mail to the American Civil Liberties Union had no effect on his court proceedings, and his access to this court was not prejudiced in any way.  The record in this case and his testimony establish that Sims has been able to send and receive other legal mail in the past and that he was not hindered in filing his complaint or other documents in the instant case. It is clear from plaintiff's testimony that he suffered <u>no</u> actual injury or legal prejudice of any kind resulting from the alleged tampering with his mail. His complaint concerning the subject conditions was filed, has been the subject of a <u>Spears</u> hearing, and is being actively considered on its merits.  Accordingly, to the extent Sims claims that the tampering of his mail interfered with his access to the courts, his claim is legally frivolous and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

As to Sims's free speech rights, "'[a] prison official's interference with a prisoner's legal mail ... may violate the prisoner's First Amendment right to free speech - <u>i.e.</u>, the right to be free from unjustified governmental interference with communication.' " <u>Damm v. Cooper</u>, 288 F. App'x 130, 132 (5th Cir. 2008) (quoting <u>Brewer</u>, 3 F.3d at 820). However,

the Fifth Circuit has recognized a legitimate penological need for prison "personnel to open, review, and occasionally censor outgoing mail" because of concerns about possible threats to prison security, including ensuring that the mail does not contain contraband. Franco v. Collins, 2015 WL 136544, at *1 (S.D. Tex. Jan. 8, 2015) (citing Busby, 359 F.3d at 721); McCartney v. Keith, 2014 WL 5092017, at *2 (W.D. La. Oct. 9, 2014) (citing Busby, 359 F.3d at 721).

As stated above, the record reflects no interference with the submission of Sims's mail to this court. Sims has successfully communicated with the court by submitting numerous documents via mail from his prison address, which were received by this court without issue. In this way, he has been permitted fully to exercise his free speech rights concerning the conditions about which he complains. His claims concerning these conditions have been made public in this court's record.

For the foregoing reasons, plaintiff's mail tampering claim is legally frivolous in all respects and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____23rd_____ day of January, 2020.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.